[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before the Court for decision is the Defendants' Motion for Leave to Take Further Property Specific Discovery in Addition to the 114 Properties. Heretofore, on June 28, 2004, this Court entered an Order herein denominated as the "Property Specific Discovery Order" pursuant to the provisions of paragraph A of that Order:
 "Defendant's (sic) initial request to gather property specific evidence relating to 114 properties in Rhode Island at which State records indicate that multiple children have tested at a blood lead level of 20mg/dL or greater, based on a venous test at the time they resided at the property be and the same hereby is granted subject to the terms and conditions hereinafter set forth."
The Court is advised that Defendants at the present time, as a result of that Order, have taken 60 depositions with respect to the 114 properties referred to in paragraph A quoted above.
By motion dated April 29, 2005, Defendants have moved for leave to take property specific discovery in addition to said 114 properties. In the memorandum filed in support of their April 29th motion, Defendants candidly state:
 "Through this motion, Defendants seek leave to serve the additional discovery of all Rhode Island property owners and residents contained within the `targeted populations' that the State's interrogatory answers finally concede are at issue in this case. To start this process, Defendants attach 764 document subpoenas to pre-1978 Rhode Island property owners in Exhibit A who were chosen from city tax assessment records. These 764 subpoenas make up the first wave of `post-114 property discovery.' Defendants seek leave to file these initial 764 subpoenas immediately and serve discovery on the remaining property owners and residents in the State's `targeted populations' on a rolling basis."
The Court notes that the references to the targeted populations refers to all homes located in Rhode Island that were built prior to the ban on lead paint in 1978. While the number of such homes may not be known to a certainty, it has been estimated to be between 220,000 and 330,000 separate units. Thus, Defendants seek discovery with respect to not less than tens of thousands, and more likely hundreds of thousands of properties.
Before discussing Defendants' request, the Court notes certain additional decisions and orders of the Court which impact on the Court's determination with respect to the motion at hand.
Specifically, the Court notes its Order of March 22, 2004, setting trial of this matter for April 6, 2005; its Memorandum of Decision and Case Management Order filed herein on May 14, 2004; its Property Specific Discovery Order filed herein on June 28, 2004; its Decision on Plaintiff's Motion in Limine to exclude evidence and testimony with respect to individual Rhode Island properties filed herein on November 9, 2004; its Second Supplemental Pre-trial Case Management Order entered herein on February 17, 2005, which inter alia
changed the date set for trial from April 6, 2005 to September 7, 2005. See Para. VI G thereof; and, Decision and Order thereon filed herein on April 25, 2005 with respect to the September 7, 2005 trial.
 Discussion
The Court chronologically has noted above a succession of decisions and orders heretofore entered by it, that it believes to be dispositive of Defendants' (perhaps) tongue-incheek request to seek discovery with respect to upwards of a quarter of a million properties (and their owners and residents). Also, the Court notes the fact that this motion was filed almost on the eve of the closure of fact discovery and but a scant four months prior to the trial date of this now over five and a half-year old case. See Second Supplemental Pre-trial Case Management Order. In fact, but for Defendants' argument at the beginning of this year to the effect that they had not had sufficient time for discovery, trial would have commenced on April 6, 2005. That date is three weeks before the instant motion was brought.
This Court, at the same time as it authorized discovery as to the 114 properties aforesaid, also provided in the Property Specific Discovery Order as follows:
"B. Additional Property Discovery.
 Any party desiring to take further property specific evidence relating to properties other than the 114 properties . . . shall be permitted to do so only upon a showing of good cause."
From the entry of that Order in June 2004 until April 29, 2005, ten months later, Defendants never sought leave of this Court with respect to properties other than the 114. The record, of course, also discloses that this Court urged the parties, and particularly the Defendants, to engage in statistically significant discovery and indeed invited the parties to provide a mechanism to that end. See Memorandum of Decision filed May 14, 2004. The Court's urgings were for naught and thereafter (1) Defendants were permitted discovery with respect to the 114 properties and (2) the Court granted Plaintiff's in limine motion with respect to property specific evidence and testimony.
From the entry of the March 22, 2004 Order, paragraph 4 of which provided "all parties may commence forthwith discovery relevant to the claims and defenses set for trial on April 6, 2005" until the current motion, Defendants never sought property specific discovery except with respect to the 114 properties.
The Court heretofore referred to Defendants' motion as perhaps a tongue-in-cheek motion because as Plaintiff suggests allowing the motion will take this matter ". . . down a path from which this case will never reach trial."
This Court holds that the timing of the Defendants' motion in juxta position to the close of discovery and to the trial date and the vastness of the discovery sought alone justifies denial of the motion.
Turning now to the provisions of our Rules of Civil Procedure which presumptively coupled with facts now at hand constitute the basis for Defendants' claim (as claim they must) that "good cause has been shown" as required by the Property Specific Discovery Order. Defendants assert their good cause is their need for factual information upon which to baseinter alia cross-examination of Plaintiff's witnesses and upon which to mount their own defense or defenses.
The Court is not unaware of the ongoing discovery with respect to damages and other relief claimed by Plaintiff. Neither are Defendants unaware of what has been provided to them in written discovery and through deposition testimony. The Court and the parties are aware that such discovery continues and of the provisions of the rules that require updating of the discovery provided.
To permit, at this junction, discovery of one quarter of a million or more properties, owners and residents who heretofore have not appeared in this case, would run afoul of the provisions of our Rules of Civil Procedure 26(b)(1), and particularly the second paragraph thereof in that the discovery would be unduly burdensome or expensive even considering the needs of the case, the amount in controversy, the parties resources, and the importance of the issues at stake in the litigation.
 Conclusion
As indicated above, the Court tried to get the parties to determine if an appropriate statistical approach could be taken to the issue of property specific discovery. That, of course, occurred some time ago. Defendants (who the Court believes should have been most interested in following that path) declined. At this late date, it is inappropriate for them to ask Court permission to commence discovery from tens of thousands or maybe hundreds of thousands of properties, owners and residents. The magnitude of their proposed discovery is so vast that even at an earlier point in this case it would have been unmanageable. In any event, Defendants here have failed to demonstrate good cause; accordingly, their motion is denied.
Order to enter.